UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAREK J. KITLINSKI,<br><br>  Plaintiff,<br><br>  v.<br><br>EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civ. A. No. 22-2976 (JEB)<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure ("Rule") 56(c) and LCvR 7(h), the Executive Office of the United States Attorneys ("Defendant" or "EOUSA"), by the undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment in response to the Complaint filed by Darek Kitlinski ("Plaintiff").

### INTRODUCTION AND SUMMARY

Plaintiff commenced this action under the Freedom of Information Act, 5 U.S.C. 552, *et seq*. ("FOIA"), seeking records pertaining to an alleged California bar counsel complaint that he filed against an Eastern District of Virginia ("EDVA") Assistant United States Attorney ("AUSA") who represented the Government in Plaintiff's employment action against the Drug Enforcement Administration.  Specifically, Plaintiff sought "copies of email communications sent and/or received by EDVA Assistant US Attorney Kimere Kimball containing information regarding an attorney misconduct complaint to the State Board of California" filed by the Plaintiff "in March 2019."  EOUSA conducted an adequate search of the AUSA and her

supervisors' emails as well as a search by EOUSA's Information Technology staff of the EDVA's entire system using terms reasonably likely to return responsive records. The searches returned no responsive records. Thus, because EOUSA searched all files using terms reasonably likely to return responsive records, summary judgment on the adequacy of EOUSA's search is warranted.

## BACKGROUND

Plaintiff commenced this action seeking "access to email communications sent and/or received by AUSA Kimere Kimball containing information regarding an attorney misconduct complaint to the State Board of California filed in March 2019, by the Plaintiff against AUSA Kimere Kimball. The date range for the record search was from March 1, 2019 to October 1, 2020." *See* ECF No. 1 ("Pl's Comp.") at 5; Declaration of Nicole Moore at ¶ 6 ("Moore Decl.").[1] "The request was sent to the United States Attorney's Office for the Eastern District of Virginia (District) . . . and they were provided . . . with a search string to locate potentially responsive records. The search string used was 'Kitlinski' AND ('Kimere' OR 'Kimball') AND ('Compl*' OR 'California' OR 'Bar') and the District was advised to search for records from March 2019 and December 2020. The search for responsive records was directed by the District's FOIA liaison and searches were conducted by AUSA Kimball, and AUSA Kimball's former supervisors Civil Chief Lauren Wetzler and Deputy Civil Chief Dennis Barghaan. The

---

[1] Kimere Kimball is an Assistant United States Attorney in the Eastern District of Virginia who handled Plaintiff's employment actions against Defendant. *See Kitlinski v. Dep't of Justice*, 994 F.3d 224, 232 (4th Cir. 2021) ("No reasonable factfinder could conclude that the DEA terminated the Kitlinskis' employment in retaliation for engaging in protected activity. As we have explained, the Kitlinskis offer no evidence showing that the DEA terminated their employment for any reason other than their conduct during the OPR investigation.").

three individuals conducting a search provided certifications that they were unable to locate responsive records." Moore Decl. at ¶ 8.

"As the Plaintiff has two suits related to the search for records pertaining to him in the same District, EOUSA requested that a third even more expansive search be conducted across the server by the IT group." Moore Decl. ¶ 10. Specifically, "[i]n July 2023, EOUSA requested that the District's IT group ("IT") conduct another search of the server of all emails to or from AUSA Kimball, all emails to or from AUSA Rebecca Levenson (an individual identified in the Plaintiff's correspondence) between March 1, 2018 and January 31, 2023 that contained either 'bar' within 5 of 'complaint,' or 'bar' within 5 of 'California' and 'Kitlinski.' That search yielded no responsive records." *Id*.

"IT reconfigured the search and commenced a search of only the Plaintiff's name on the server for the period requested. That search yielded no responsive records. IT also conducted a search omitting the Plaintiff's name and reviewed all emails that contained the terms "bar," "complaint," and, "California" and there were none related to any complaint made about AUSA Kimball or any from the State Bar of California." Moore Decl. ¶ 10. "In addition, EOUSA also directed that the Law and Policy Section of DOJ's Environment and Natural Resources Division, the component that AUSA Kimball has been with since 2021, conduct a search for responsive records. They conducted a search for any records containing the Plaintiff's name for the period of time and their search also yielded no results." *Id*. ¶ 11. In every manner and means possible, EOUSA has attempted to direct and conduct the most expansive and exhaustive search on behalf of the Plaintiff and in each instance, there have been no responsive records." *Id*. ¶ 12.

## STANDARD OF REVIEW

a. **General Summary Judgment Standard**

3

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *Id.* at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987). In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

  b.  **Summary Judgment Standard as Applied to FOIA Cases**

FOIA cases are appropriately resolved at summary judgment. *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review by the Courts. *Hayden v. Nat'l Sec. Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and, if applicable, that each document that falls within the class requested has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. Dep't. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

"Under the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition. The burden is always on the movant to demonstrate why summary judgment is warranted. The nonmoving party's failure to oppose summary judgment does not shift that burden. The District Court must always determine for itself whether the record

and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (internal quotations omitted).

An agency may defeat the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence, which show that the documents in question were produced or are exempt from disclosure. *Hayden v. NSA*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979); *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC*, 141 F.Supp.2d 62, 67 (D. D.C. 2001) (summary judgment in FOIA cases may be resolved solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). *See also Public Citizen, Inc. v. Dep't of State*, 100 F.Supp.2d 10, 16 (D. D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

## ARGUMENT

**Defendants Conducted an Adequate Search**

Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989)); *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998). Therefore, an agency only "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Id*. (quoting *Truitt v.*

*Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Although there "is no requirement that an agency search every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

To demonstrate that it has performed an adequate search for responsive documents, an agency must submit a reasonably detailed affidavit describing the search. *See Defs. of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 91 (D. D.C. 2009). An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife*, 623 F.Supp.2d at 92 (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used). However, agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment. *Weisberg*, 627 F.2d at 371. Moreover, conclusory assertions about the agency's thoroughness are insufficient. *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1121 (D.C. Cir. 2007); *Nat'l Sec. Counselors v. CIA*, 849 F.Supp.2d 6, 11 (D. D.C. 2012) ("The affidavit must explain the scope and method of [its] search in a non-conclusory fashion.").

"Agency affidavits are accorded a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 1200 (D.C. Cir. 1991), which can be rebutted with "evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981), or when "a review of the record raises substantial doubt" that certain materials were overlooked despite well-defined requests. *Valencia-Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology, Inc. v.*

6

*National Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1981); *see also Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1981) ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

In this case, Defendants are entitled to summary judgment regarding the adequacy of their search as demonstrated by its appropriate interpretation of Plaintiff's request as well as its search reflected in the Moore Decl. *See* Exhibit A. In his request, Plaintiff seeks "'copies of email communications sent and/or received by EDVA Assistant US Attorney Kimere Kimball containing information regarding an attorney misconduct complaint to the State Board of California' filed by the Plaintiff 'in March 2019.'" *Id*. at ¶ 6. The request was sent to the EDVA where AUSA Kimball worked to do the search; and the District was provided with a search string to locate potentially responsive records. The search string used was "Kitlinski" AND ("Kimere" OR "Kimball") AND ("Compl*" OR "California" OR "Bar") and EDVA was advised that they search for records from March 2019 and December 2020. *Id*. ¶ 8. Searches were conducted by AUSA Kimball, and [her] former supervisors Civil Chief Lauren Wetzler and Deputy Civil Chief Dennis Barghaan. *Id*.

"As the Plaintiff has two suits related to the search for records pertaining to him in the same District, EOUSA requested that a third even more expansive search be conducted across the server by the IT group. In July 2023, EOUSA requested that the District's IT group conduct another search of the server of all emails to or from AUSA Kimball, all emails to or from AUSA Rebecca Levenson . . . between March 1, 2018 and January 31, 2023, that contained either 'bar' within 5 of 'complaint,' or 'bar' within 5 of 'California' and 'Kitlinski.' That search yielded no responsive records." Moore Decl. at ¶ 10. "IT reconfigured the search and commenced a search of only the Plaintiff's name on the server for the period requested. That search yielded no

7

responsive records." *Id*. "IT also conducted a search omitting the Plaintiff's name and reviewed all emails that contained the terms 'bar,' 'complaint,' and, 'California' and there were none related to any complaint made about AUSA Kimball or any from the State Bar of California." *Id*. "EOUSA also directed that the Law and Policy Section of DOJ's Environment and Natural Resources Division, the component that AUSA Kimball has been with since 2021, conduct a search for responsive records. They conducted a search for any records containing the Plaintiff's name for the period of time and their search also yielded no results." *Id*. at ¶ 11.

"[A] search need not be perfect, [but] only adequate . . . measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). To prevail on summary judgment, then, the defending "agency must show beyond material doubt [] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "The court applies a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure," *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998) (quoting *Weisberg*, 705 F.2d at 1351). In general, the adequacy of a search is "determined not by the fruits of the search, but by the appropriateness of [its] methods." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

Courts generally consider the absence of responsive documents in assessing the adequacy of a search only where the plaintiff points to a particular document the agency should have, but failed to, disclose. *See CREW v. Gen. Servs. Admin*., Civ. No. 18-cv-377 (CRC), 2018 U.S. Dist. Lexis 211704, 2018 WL 6605862, at *3 (D.D.C. Dec. 17, 2018) (citing *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). Here, there can be little doubt that Defendant's search was reasonably calculated to uncover responsive records. The fact that

Defendants' used Plaintiff's own name to search for responsive records and did in fact return Plaintiff's criminal file from which responsive extradition-related records were produced is evidence of Defendants' adequate search. *See Pinson v. DOJ*, 2017 U.S. Dist. Lexis 140312 **19-21 (D.D.C. 2017) ("[T]he Court thus grants the DOJ summary judgment" because "EOUSA adequately searched . . . all record systems likely to contain responsive records . . . and describes how the FOIA coordinator searched the applicable boxes of physical files by hand using the name of the defendant[,] includ[ing] the search term used[.]"); *Parker v. ICE,* 2017 U.S. Dist. Lexis 29548 *20 (D. D.C. 2017) ("ICE explains in detail how it determined which systems were likely to contain responsive documents, and describes its process for searching those systems[,]" including "using [Mr. Parker's] name as a search term."); *Barouch v. DOJ*, 962 F. Supp. 2d 30, 54-55 (D.D.C. 2013) (finding that E]OUSA "conducted an adequate search" using the procedures outline in both Finney and Salazar declarations). Even where an agency has not explained the origin of its search terms, Courts have nonetheless found the search terms that were employed were reasonable . . . after comparing the search terms utilized in response to the plaintiff's FOIA request. *Heffernan v. Azar*, 317 F. Supp. 3d 94, 108 (D.D.C. 2018). Because Defendant's search was reasonably calculated to return responsive records, it was adequate under FOIA and summary judgment is appropriate.

*   *   *

## **CONCLUSION**

For the foregoing reasons, because there can be no genuine factual dispute that an adequate search was conducted, EOUSA is entitled to judgment as a matter of law.

August 15, 2023                  Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:    /s/
KENNETH ADEBONOJO
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202)252-2562